UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

FORT MYERS DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, as trustee on behalf of the holders of the Home Equity Asset Trust 2006-7 Home Equity Pass Through Certificates, Series 2006-7, | Case No. 2:10-cv-503 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER RE: COURT TRIAL |
| vs. |  |
| FIRST AMERICAN TITLE INSURANCE COMPANY, |  |
| Defendant. |  |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

A trial to the Court in this action commenced on Tuesday, March 27, 2012, at the Federal Courthouse in Fort Myers, Florida. The parties presented closing argument on March 28, 2012. After considering the evidence presented at trial, the arguments of counsel and the applicable law, the Court issues its decision in this action.

## FACTUAL BACKGROUND

On June 22, 2006, Lenders Direct Capital Corporation loaned $680,000 to Zoe and Christakis Michael. This was a new loan on the on the Michaels' home in Ft. Myers, Florida. On June 22, 2006, the Note was assigned by Lenders Direct to Plaintiff U.S. Bank. JT Ex. 14, attach. A. The proceeds of the loan were used in part to pay off previous obligations the borrowers. Chase Home Finance LLC was paid $200,964.25. Northern Trust Bank was paid $75,210.00, and Wachovia Bank, N.A., (formerly First Union National Bank) was paid $226,554.46. JT Ex. 12. The Wachovia loan was a home equity line o f credit loan.

Allegiance Title of Florida, Inc. ("Allegiance")was the closing agent in the June 2006 Zoe and Christakis Michael loan transaction, and also the issuer of the Defendant First American Title

Insurance Company's policy of title insurance to U.S. Bank. Allegiant was solely the agent of Defendant. As the closing agent, Allegiance was required to have the Michaels direct Wachovia to close their home equity line of credit with Wachovia. Wachovia was later taken over by Wells Fargo, and James Thibodeau, an employee of Wachovia, continued his employment on with Wells Fargo and at the time of his deposition was employed as an operations analyst in the home equity group collection servicing unit.[1]

The uncontroverted testimony of James Thibodeau is that even if a home equity line of credit is paid down to zero, as it was in the case at hand, a bank cannot close out the line of credit without the borrower's consent. Thibodeau depo. 22. There is no showing in the record that the Michaels ever gave that consent or that Allegiance, as the closing agent, transmitted such a written consent to Wachovia. There is an envelope in the record which was received by Wachovia from Allegiance with a notation on the envelope after receipt of the envelope, stating: "No Check Rec'd By DSR." (JT 16). Wachovia, however, did somehow receive a $226,554.46 check. A payment of $226,554.46 was applied on July 3, 2006, and the Michaels' home equity line was paid down.[2] Thibodeau depo. 31.

James Thibodeau was well qualified to testify as to Wachovia and now Wells Fargo record retention practices from the time in issue and he was confident that the record retention practices were very reliable and that Wachovia never received a consent from the Michaels to close their line of credit. Thibodeau depo. 24-25, 36, 37, 38, 82, 83, 131. In fact, the Michaels continued to draw on the line of credit and ran up in excess of another $200,000 in indebtedness on that line of credit with Wachovia until the line was finally cancelled in December of 2007, after three months of nonpayment on the home equity line of credit.

---

[1]Prior to working as an operations analyst for Wells Forgo, Mr. Thibodeau worked for Wachoviaas a defensive litigation plan and counterclaim specialist, and as a foreclosure team leader and analyst. Thibodeau depo. 15-17. Mr. Thibodeau's experience includes reviewing, analyzing and researching home equitly loans and lines of credit when they enter Wells Fargo's collections area. Thibodeau depo. 20.

[2]Thibodeau testified that a paydown is when the account is paid down without the bank receiving a signed request by the account owners to close the home equity line of credit. Thibodeau depo. 31.

If Wachovia had received a written consent to close the Michaels' line of credit, then Wachovia under FLA. STAT. § 701.04[3] would have had to file a satisfaction of their lien and within 60 days provide a copy of that satisfaction. Allegiance never received notice of any such satisfaction and the Wachovia lien became the first lien ahead of U.S. Bank's mortgage.

The closing agent from Allegiance testified that she has no recollection of this closing as business was very busy in 2006. She at that time was sometimes doing as many as seven or eight closings in a day. She was not the person at Allegiance that would subsequently check to see if all of the liens were satisfied as was represented in the in the title insurance policy. Allegiance subsequently went out of business sometime before 2010 and lost, disposed of or destroyed all of its records.

Defendant has argued that one of its elements of prejudice was inability through the passage of time to examine Allegiance's records. The too-prompt disposal by its own agent of important business records is not an element of prejudice to Defendant.[4] There are other ways, however, in

---

[3]FLA. STAT. § 701.04 provides in relevant part:
> Within 14 days after receipt of the written request of a mortgagor, the holder of a mortgage shall deliver to the mortgagor at a place designated in the written request an estoppel letter setting forth the unpaid balance of the loan secured by the mortgage, including principal, interest, and any other charges properly due under or secured by the mortgage and interest on a per-day basis for the unpaid balance. Whenever the amount of money due on any mortgage, lien, or judgment shall be fully paid to the person or party entitled to the payment thereof, the mortgagee, creditor, or assignee, or the attorney of record in the case of a judgment, to whom such payment shall have been made, shall execute in writing an instrument acknowledging satisfaction of said mortgage, lien, or judgment and have the same acknowledged, or proven, and duly entered of record in the book provided by law for such purposes in the proper county. Within 60 days of the date of receipt of the full payment of the mortgage, lien, or judgment, the person required to acknowledge satisfaction of the mortgage, lien, or judgment shall send or cause to be sent the recorded satisfaction to the person who has made the full payment.

[4] The Court notes that the *Valcin* doctrine, *see Public Health Trust of Dade County v. Valcin*, 507 So.2d 596, 599 (Fla.1987), may be applied when, through the defendant's negligence, essential records are missing or inadequate, and such absence or inadequacy hinders a plaintiff's ability to establish a prima facie case. In such instances, a rebuttable presumption of negligence is placed on the defendant Once the defendant introduces evidence tending to disprove the

which the Defendant was prejudiced by a late and inadequate notice of the title defect of U.S. Bank being second to the Wachovia mortgage.

On February 7, 2008, the Michaels signed a short sale contract with Michael and Terry Reilly for $720,000, with a $10,000 escrow deposit. P's Ex. 51. The servicing agent for U.S. Bank, Select Portfolio Servicing, initially agreed to the short sale on March 6, 2008, contingent upon U.S. Bank receiving a payoff amount of $666,510.61, good through April 4, 2008. P's Ex. 53. Mr. Edward Schiff, the Michaels' realtor, advised Wachovia of the $720,000 short sale contract on February 29, 2008. P's Ex. 59. In correspondence dated July 31, 2008, counsel for Wachovia advised Mr. Schiff that Wachovia Bank was the first lienholder, not the second lienholder on the Michaels' property. P's Ex. 55. Wachovia ultimately rejected the short sale unless Wachovia was paid in full on its outstanding loan balance of over $200,000 as it had a first lien position. Select Portfolio Servicing had full authority in all respects to deal with the U.S. Bank mortgage. Select Portfolio Servicing refused to pay in full or negotiate with Wachovia, and after about a year after signing the short sale contract and pursuing the sale of the Michaels' home, the Reillys withdrew their offer to purchase. There is no indication in the record that the Reillys could not perform had the short sale been approved by Select Portfolio Servicing. If the short sale had been consummated, U.S. Bank would have received $666,510.61 after realtor fees and other closing expenses were paid.

In support of an alternative measure of the value of the Michael's property, Matthew Simmons, a certified residential appraiser, opined that the Michaels' house on December 29, 2009, was worth $500,000.00, based on comparable sales in the area.

On March 27, 2008, Wachovia filed a foreclosure action against the Michaels. Defendant's Ex. Q (1). The summon and complaint were served on Mortgage Electronic Registration Systems, Inc., on April 7, 2008, (Defendant's Ex. Q (5)) and forwarded to Select Portfolio Servicing on April

---

presumed fact, the fact finder then decides whether the evidence introduced is sufficient to meet the burden of proving that the presumed fact did not exist. 507 So.2d at 600-01. However, the *Valcin* presumption is limited in its application, as the Florida Supreme Court has cautioned, "The presumption, shifting the burden of producing the evidence, is given life only to equalize the parties' respective positions in regard to the evidence and to allow the plaintiff to proceed." *Valcin*, 507 So.2d at 599-600; *see also Anesthesiology Critical Care & Pain Management Consultants, P.A*, 802 So.2d 346, 349 (Fla.App. 4 Dist., 2001).

4

8, 2008. Select Portfolio Servicing, therefore, had prompt notification in April 2008 of the action in Lee County, Florida. Select Portfolio Servicing, as U.S. Bank's loan servicing agent, never appeared in the Wachovia foreclosure action despite receiving notice of various steps of the litigation including the May 14, 2008 motion for default and May 19, 2008 default (Defendant's Ex. Q (8)), the November 25, 2008 Summary Final Judgment in Foreclosure (Defendant's Ex. Q (12)), and the subsequent sale of the Michaels' property. The foreclosure sale on December 29, 2008, terminated U.S. Bank's secondary security interest in the property.[5]

Instead of appearing or attempting to intervene in the Wachovia foreclosure action, U.S. Bank on May 8, 2008, initiated its own foreclosure action on the Michaels' property (Defendant's Ex. R) and never moved to consolidate these Lee County foreclosure actions although they dealt with the same property. Wachovia was not named as party to the U.S. Bank foreclosure action which was brought by Florida Default Law Group, P.L., as attorney for U.S. Bank The U.S. Bank foreclosure action was dismissed for lack of prosecution on August 6, 2010. (Defendant's Ex. R (17)).

## DISCUSSION OF LIABILITY

Defendant First American Title Insurance Company, through it agent, Allegiance, breached its duty to comply with the written closing instructions as they related to the status of title to the Michaels' property. In addition, the U.S. Bank lien was not first as was insured by the title policy. First American Title Insurance Company maintains however that it is not liable to Plaintiff U.S. Bank because U.S. Bank violated the notice requirements of the policy. A presumption of prejudice to the insurer exists for a late notice of loss and the burden is on the insured to show that its late notice of loss did not cause prejudice. *Holinda v. Title and Trust Co. of Florida*, 438 So.2d 56 (Fla.App. 5 Dist.1983). Defendant First American Title Insurance Company claims it has been totally prejudiced and that Plaintiff U.S. Bank should recover nothing in this action. Defendant has been prejudiced by Plaintiff giving neither timely nor adequate notice of the defect in title. Select Portfolio, U.S. Bank's loan servicing agent, received a firm notification of the title defect when it continued to receive the Wachovia foreclosure action documents starting on or about April 8, 2008. In addition, the defect was known as early as July 31, 2008, by Mr. Schiff, the realtor for the

---

[5]The property was sold to the highest bidder for $327,050.00. Defendant's Exhibit Q (17).

Michaels when he was informed by a faxed communication from Wachovia that it was the first lienholder (P's Ex. 55), and Mr. Schiff then communicated that information to Select Portfolio Servicing.

Defendant received the letter notice from U.S. Bank's counsel, Florida Default Law Group, dated November 19, 2008 (Joint Trial Exhibit 27). This letter notice was not timely. In addition, it was not adequate in that it did not advise that the property was actually in the last stages of foreclosure through the Wachovia foreclosure litigation.

Had the Defendant First American Title Insurance Company known of the Wachovia foreclosure action at an earlier time, it could have intervened and urged equitable subrogation to the Chase Home Finance LLC position of $200,964.25. Wachovia would have been in the next position with U.S. Bank then getting the remainder of the value of the house after Wachovia's second lien was satisfied. This would likely have been the result because through this approach Wachovia would have been paid in full and its position would not be prejudiced as is required by the Florida doctrine of equitable subrogation. *See Aurora Loan Servs. LLC v. Senchuk*, 36 So.2d 716, 720 (2010)(Equitable subrogation will not be allowed if it works an injustice to the rights of others.).

Defendant First American Title Insurance Company also urges that Plaintiff U.S. Bank's claims should be denied as U.S. Bank never filed a proof of loss. That defense is denied because the trial testimony showed that Defendant set up a separate section to deal with the many claims filed by the Florida Default Law Group, P.L. The Florida Default Law Group, P.L. was the counsel for U.S. Bank through Select Portfolio Servicing in filing the claim with Defendant First American Title Insurance Company. Defendant had a practice of acting upon those claim letters from the Florida Default Law Group without subsequently requiring a separate proof of loss from the Florida Default Law Group, P.L. on behalf of its clients. Despite that practice, Defendant was entitled to more timely letter notice and a much more specific letter notice from Florida Default Law Group.

The prejudice to Defendant First American Title Insurance Company would defeat Plaintiff U.S. Bank's claims were it not for the provisions in the title policy and the closing protection letter restricting termination of liability for lack of prompt notice only to the extent of prejudice suffered by Defendant First American Title Insurance Company because of the lack of prompt notice. Paragraphs 3 and 4 of the title policy in this case provide:

> (3) Notice of Claim to Be Given By Insured Claimant
> The insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 4(a) below; (ii) in case knowledge shall come to an insured hereunder of any claim of title or interest which is adverse to the title to the estate or interest or the lien of the insured mortgage, as insured, and which might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) title to the estate or interest or the lien of the insured mortgage, as insured, is rejected as unmarketable. If prompt notice shall not be given to the Company, then as to the insured all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required,
>
> provided, however, that failure to notify the Company shall in no case prejudice the rights of any insured under this policy unless the Company shall be prejudiced by the failure and then only to the extent of the prejudice.

Likewise, the Closing Protection Letter states that if First American Title Company does not receive prompt notice of a loss: "[T]hen liability of the First American Title Insurance Company hereunder shall be reduced to the extent of such prejudice." JT Ex. 8. There follows on the Closing Protection Letter a provision that notice must be given within 90 days from the date of discovery of the loss. The actual loss took place on December 29, 2008, when the property was sold at foreclosure auction. The Defendant was on notice before that with the November 19, 2008 letter claim from Florida Default Group. As a result of that letter claim Donna Durbin knew of a "Huge problem"[6] when she ran a title search after she got to the file at the end of January 2009. Ms Durbin saw that the Wachovia lien was first.

The Court determines if there should be a partial or a full reduction of liability on the part of the Defendant because of the prejudice to the Defendant. *See Attorneys' Title Ins. Fund, Inc. v. Rogers*, 552 So.2d 329, 331 (Fla.App. 4 Dist. 1989)(insured recovers despite late notice of claim when policy provide that "failure to notify shall in no case prejudice the rights of any such insured under this policy unless The Fund (insurer) shall be prejudiced by such failure and then only to the

---

[6] The Email dated January 29, 2009 from Donna Durbin to Suzanne Mozley states, "Huge problem-even though HUD shows payoff of Wachovia mortgage-apparently Wachovia did not receive the payoff funds...."

7

extent of such prejudice."). *But cf. Eastpointe Condominium I Ass'n, Inc. v. Travelers Cas. and Sur. Co. of America*, 664 F.Supp.2d 1281, 1286 (S.D.Fl.2009)(Court recognizes that under Florida law an insurer is relieved of all liability under an insurance policy if the insurer has been prejudiced by the insured's failure to comply with a notice of lawsuit provision where the policy requires the insured to "give to the Insurer written notice of any [ ] claim as soon as practicable ...." and to "give the Insurer such information and cooperation as it may reasonably require.").

If the $720,000 short sale had closed, there would have been $666,510.61 left after expenses. The Wachovia lien would have had to have been satisfied leaving $407,736.60. Wachovia wold not reduce their lien amount to facilitate the short sale, so it is not realistic, but instead is speculation to believe they would have reduced their lien amount under other circumstances. The result would be that U.S. Bank would still be short $272,263.32 on their $680,000 loan. The record does not contain other information on loan payments or accruals.

The other liability scenario is that on the day of the foreclosure sale, December 29, 2008, the property was appraised at $500,000, using comparable area sales. That appraisal does not take into account closing costs from a sale. The total expenses for the proposed $720,000 short sale were 7.4% of the sale price. Taking that same percentage from the $500,000 value would result in a net from sale of $463,000. After satisfying the lien of Wachovia which was apparently $258,773.93, U.S. Bank would have a net value of $204,226.07 to apply against its $680,000 loan.

In view of the $500,000 appraisal, it is easy to see why the realtor was diligent in trying to get the $720,000 short sale consummated. He claimed that he had spent thousands in advertising the property and this was his only offer on the property. Unless the short sale purchasers had a lot of cash to put into the transaction, the consummation of the short sale does not seem likely. The purchasers were persistent for about a year but there is no indication other than their persistence and their $10,000 deposit that they could perform on the $720,000 purchase on a house with a reputable $500,000 appraisal. Accordingly, the Court determines that the second scenario is the more sound and more probable.

The second scenario whereby U.S. Bank recovers $204,226.07 under the title policy is, absent speculation, the best position Defendant could have been in on the policy claim if the notice had been earlier and more complete. Notice should certainly have been given at the time Select

Portfolio Servicing received notice of the Wachovia's foreclosure action in April of 2008. That notice would not be notice of a loss as there was no loss until December 29, 2008, within the meaning of the 90-day notice requirement. Therefore, the policy protection remains in effect but prejudice from lack of an earlier notice than the November 19, 2008 letter from Florida Default law Group must be weighed. Even if the notice had been given at the time of the commencement of the Wachavia litigation, it is the Court's conclusion that Defendant would have had to pay $204,226.07 to U.S. Bank on what was supposed to be a $680,000 mortgage. That is the amount U.S. Bank as the insured can recover. The difference of $475,773.93 which U.S. Bank cannot recover is the reduction in exposure of Defendant to U.S. Bank for prejudice from the late and inadequate notice of loss received by Defendant.

Defendant First American Title Insurance Company has urged that it should have its attorney fees considered as a part of the prejudice to the Defendant because of the late and inadequate notice of loss. If Plaintiff's lawsuit was without merit, this position may warrant consideration. However, since the Plaintiff is the prevailing party, even though not recovering all that was requested, the defense of the claim was a part of the business of insurance and not a part of the prejudice that must be considered in determining the existence and amount of liability in this case.

Counsel for Plaintiff U.S. Bank as the prevailing party shall submit proposed findings of fact and conclusions of law consistent with this memorandum opinion. Florida has adopted the position that prejudgment interest is an element of pecuniary damages, and that neither the merit of the defense nor the certainty of the amount of loss affects the award of prejudgment interest. *Bosem v. Musa Holdings, Inc.*, 46 So.3d 42, 45 (Fl .2010). Plaintiff U.S. Bank is therefore entitled to prejudgment interest once the amount of damages and Defendant's liability therefor has been determined. Counsel for both parties shall therefore submit their calculations of prejudgment interest for the Court to consider. Plaintiff U.S. Bank is also entitled to attorney's fees under FLA. STAT. § 627.428(1). Accordingly,

IT IS ORDERED:

1. That Plaintiff U.S. Bank shall submit its motion and supporting documentation for attorney's fees within 10 days of the date of this Memorandum Opinion;

2. That counsel for both parties shall submit their calculations for prejudgment interest within 10 days of the date of this Memorandum Opinion; and

3. That Counsel for Plaintiff U.S. Bank as the prevailing party shall submit proposed findings of fact and conclusions of law consistent with this Memorandum Opinion within 20 days of the date of this Memorandum Opinion.

Dated this 30th day of March, 2012.

BY THE COURT:

Lawrence L. Piersol
United States District Court